UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

RICARDO S. JUARBE-ACEVEDO,
et al.,

    Plaintiffs,

v.

UNITED STATES OF AMERICA,

    Defendant.

Civil No. 97-1220 (JAF)

## OPINION AND ORDER

Plaintiffs, Ricardo S. Juarbe-Acevedo ("Juarbe"), his wife, María C. Rivera; and their conjugal partnership, inter alia, bring a monetary damages suit against Defendant, the United States of America, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346 and 2671 (1993), alleging medical malpractice on the part of the San Juan Veterans' Medical Center ("VA Hospital").

Defendant moves for summary judgement arguing that the running of the appropriate statute of limitations bars Plaintiffs' action.

### I.

### Factual and Procedural Synopsis

Plaintiff Juarbe underwent a laminectomy at the VA Hospital on November 14, 1991. Nearly two weeks after the surgery and while still at the VA Hospital, he developed urinary and fecal

incontinence, general weakness, and a loss of motor movements. On March 14, 1992, the VA Hospital discharged him, although he continued to suffer from weakness in the four extremities and dysfunction of his urinary and fecal sphincters.

Given the allegedly deteriorating nature of Plaintiff Juarbe's condition, he was taken to the J.F.K. Johnson Rehabilitation Institute in Edison, New Jersey. There, on September 2, 1992, a doctor evaluated him and diagnosed paraplegia from the thoracic T10 level. Plaintiffs assert that Plaintiff Juarbe visited other hospitals of the Veterans' Administration before arriving at the Walter Reed Army Medical Center ("Walter Reed") in Washington, D.C.

In July 1993, doctors in the neurosurgery clinic at Walter Reed saw Plaintiff Juarbe, but did not admit him at this time. Three months later, in October 1993, Plaintiff Juarbe developed severe headaches, fever, photophobia, and a stiff neck. The doctors at Walter Reed diagnosed aseptic meningitis and an urinary tract infection, and admitted him. Following a magnetic resonance test ("MRI"), which revealed a tumor wrapped around the middle and lower portions of the spinal medulla, doctors at Walter Reed performed a posterior laminectomy on Plaintiff Juarbe on December 15, 1993. He was discharged on January 4, 1994, only to be readmitted on January 29, 1994, for headaches and papilledema. As a result of their examination of Plaintiff Juarbe, doctors at Walter Reed

Civil No. 97-1220 (JAF)                                                          3-

concluded that he did not suffer from bacterial meningitis, but rather that the abnormalities revealed during the lumbar punctures were of a chronic origin and possibly related to post-operative changes and his necrotic spinal cord. Walter Reed discharged Plaintiff Juarbe on February 21, 1994.

On February 20, 1996, Plaintiffs filed separate administrative claims before the Department of Veterans' Affairs ("VA"), alleging negligence on the part of the VA Hospital in treating Plaintiff Juarbe. On October 30, 1997, the VA formally denied Plaintiffs' claims. In its letter of denial, the VA stated that Plaintiffs alleged:

> [N]egligence on the basis that the medical staff of the San Juan VA Medical Center failed to diagnose, treat and take neurosyphilis into account before performing a cervical posterior total laminectomy and foraminotomy surgery which was a contraindicated surgical intervention, followed by neglect post-operative treatment.

Docket Document No. 15, Exh. D.

On February 19, 1997, Plaintiffs filed the present federal complaint. On November 14, 1997, the government moved to dismiss arguing that we lacked subject matter jurisdiction because Plaintiffs allegedly did not exhaust their administrative remedies and the applicable statute of limitations barred their claim. We subsequently denied the motion to dismiss, holding that: (1) Plaintiffs satisfied the administrative exhaustion requirements

Civil No. 97-1220 (JAF)  4-

by providing adequate written notice to the VA; and (2) the statute of limitations did not bar Plaintiffs' claim.

Allegedly based upon the recent discovery of Plaintiff Juarbe's claim for benefits pursuant to 38 U.S.C. § 1151 (1988),[1] Defendant

---

[1]Section 1151 provides, in relevant part, that:

> Compensation under this chapter and dependency and indemnity compensation under chapter 13 of this title shall be awarded for a qualifying additional disability or a qualifying death of a veteran in the same manner as if such additional disability or death were service-connected. For purposes of this section, a disability or death is a qualifying additional disability or qualifying death if the disability or death was not the result of the veteran's willful misconduct and—
> (1) the disability or death was caused by hospital care, medical or surgical treatment, or examination furnished the veteran under any law administered by the Secretary, either by a Department employee or in a Department facility as defined in section 1701(3)(A) of this title, and the proximate cause of the disability or death was—
> carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of the Department in furnishing the hospital care, medical or surgical treatment, or examination; or . . .
> (B) an event not reasonably foreseeable; or
> (2) the disability or death was proximately caused by the provision of training and rehabilitation services by the Secretary (including by a service-provider used by the Secretary for such purpose under section 3115 of this title) as part of an approved rehabilitation program under chapter 31 of this title.

38 U.S.C. § 1151.

Civil No. 97-1220 (JAF)                                              5-

moves for summary judgement, again arguing that the applicable statute of limitations bars Plaintiffs' present complaint.

## II.

### **Summary Judgment Standard**

The standard for summary judgment is straightforward and well-established. A district court should grant a motion for summary judgment "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see Lipsett v. University of P.R., 864 F.2d 881, 894 (1st Cir. 1988). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law," and "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The burden of establishing the nonexistence of a genuine issue as to a material fact is on the moving party. See Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986). This burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. See id. In other words, "[t]he party moving for summary judgment, bears the

Civil No. 97-1220 (JAF)                                                    6-

initial burden of demonstrating that there are no genuine issues of material fact for trial." Hinchey v. NYNEX Corp., 144 F.3d 134, 140 (1st Cir. 1998). This burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. After such a showing, the "burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (citing Celotex, 477 U.S. at 322-25).

Although the ultimate burden of persuasion remains on the moving party, the nonmoving party will not defeat a properly supported motion for summary judgment by merely underscoring the "existence of some alleged factual dispute between the parties;" the requirement is that there be a genuine issue of material fact. Anderson, 477 U.S. at 247-48. In addition, "factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248. Under Rule 56(e) of the Federal Rules of Civil Procedure, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); Anderson, 477 U.S. at 256. Summary judgment exists to "pierce the boilerplate of the pleadings," Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992), and "determine whether a trial actually is

AO 72
(Rev 8/82)

Civil No. 97-1220 (JAF)                                              7-

necessary." Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

### III.

### **Analysis**

Subsection (b) of 28 U.S.C. § 2401 (1993) provides:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

Accordingly, the commencement of an administrative claim with the appropriate federal agency within two years of the cause of action's accrual is a jurisdictional prerequisite to filing suit in federal court pursuant to the FTCA. See Santiago Ramirez v. Secretary of Dep't of Defense, 984 F.2d 16, 18 (1st Cir. 1993) ("Failure to timely file an administrative claim with the appropriate federal agency results in dismissal of the plaintiff's [federal suit], since the filing of an administrative claim is a non-waivable jurisdictional requirement.") (citations omitted). Thus, to ascertain when the two-year statute of limitations begins to run, we must first identify when a cause of action accrues for purposes of 28 U.S.C. § 2401.

Before 1979, the First Circuit held that state law determines when a claim accrues. See Hau v. United States, 575 F.2d 1000, 1002

Civil No. 97-1220 (JAF)                                                8-

(1st Cir. 1978) ("In determining when a claim accrues, for purposes of [the FTCA], this Circuit, unlike other circuits which follow federal law, follows the *lex loci* rule-the applicable law is the law of the state where the claim arose.") (citations omitted). However, in United States v. Kubrick, 444 U.S. 111 (1979), the Supreme Court, although not expressly addressing the question of whether federal or state accrual rules govern FTCA claims, assumed that the federal, and not state, rule controlled. See id. at 118-21 (interpreting federal rule which circuit court had applied). The First Circuit has subsequently not directly considered the validity of its pre-Kubrick precedent. Nevertheless, several cases have followed, without discussion, the Court's approach in Kubrick and applied the federal rule. See Attallah v. United States, 955 F.2d 776, 779 (1st Cir. 1992); Gonzalez-Bernal v. United States, 907 F.2d 246, 249 (1st Cir. 1990); Nicolazzo v. United States, 786 F.2d 454, 455-56 (1st Cir. 1986); Marrapese v. State of R.I., 749 F.2d 934, 943 (1st Cir. 1984); Fidler v. Eastman Kodak Co., 714 F.2d 192, 199 (1st Cir. 1983); Galarza v. Zagury, 702 F.2d 29, 32 (1st Cir. 1983); Heinrich v. Sweet, 44 F. Supp.2d 408, 415 (D. Mass. 1999). The overwhelming majority of other circuits have done similarly. See e.g., Johnson v. United States, 85 F.3d 217, 218 (5th Cir. 1996); Osborn v. United States, 918 F.2d 724, 731 (8th Cir. 1990); Gould v. United States, 905 F.2d 738, 742 (4th Cir. 1990); Sexton v. United States, 832 F.2d 629, 633 n.4

Civil No. 97-1220 (JAF)                                                          9-

(D.C. Cir. 1987); Zeleznik v. United States, 770 F.2d 20, 22 (3d Cir. 1985); Barrett v. United States, 689 F.2d 324, 327 (2d Cir. 1982); Fernandez v. United States, 673 F.2d 269, 271 (9th Cir. 1982); Stoleson v. United States, 629 F.2d 1265, 1268 (7th Cir. 1980). Therefore, we find that federal law determines when a cause of action accrues.

The Supreme Court articulated the federal rule in Kubrick. Reversing a lower court's holding that a medical malpractice claim under the FTCA did not accrue until the plaintiff knew or should have known that the doctor who allegedly caused the injury was legally liable, the Court held that a FTCA claim accrues within the meaning of 28 U.S.C. § 2401(b) when the plaintiff knows the existence and cause of her injury. See Kubrick, 444 U.S. at 121-24. The Court reasoned that relieving plaintiffs in medical malpractice suits from exercising reasonable diligence in discovering and protecting their legal rights would undermine the purpose of the statute of limitations, which is to encourage the prompt presentation of claims. See id. at 117. Thus, when a plaintiff has knowledge about the critical facts concerning her injury and its cause, she has a duty to investigate promptly and file a timely claim for relief.

In the present case, the parties disagree as to when Plaintiff Juarbe knew or should have known about the cause of his injury. Relying on Hau, Defendant argues that Plaintiffs' cause of action

AO 72
(Rev 8/82)

Civil No. 97-1220 (JAF) 10-

accrued the date that Plaintiff Juarbe signed the 38 U.S.C. § 1151 claim for benefits. In Hau, the Veterans' Administration Hospital in Rio Piedras, Puerto Rico, on September 4, 1974, performed an arteriogram through the plaintiff's right femoral artery. Following the examination, the plaintiff suffered swelling and pain which led him to see two doctors who suggested that he consult a specialist. Subsequent to visiting the specialist's office and finding him occupied in a lengthy meeting, the plaintiff on November 11, 1974, sent him a letter in which he stated that "[d]ue to the negligence of the hospital [in conducting the arteriogram] I have become disabled." Hau, 575 F.2d at 1001. On March 19, 1975, the plaintiff visited another specialist who diagnosed the problem as a femoral nerve injury of undetermined cause. See id. Over two years after the plaintiff sent the letter to the first specialist, the plaintiff filed an administrative claim against the Veterans' Administration Hospital in Río Piedras. See id. On April 18, 1977, the Veterans' Administration denied the claim. See id. The plaintiff subsequently instituted a FTCA action against the same hospital which the district court dismissed on statute of limitations grounds.

On appeal, the First Circuit considered whether the plaintiff had filed a timely FTCA claim pursuant to 28 U.S.C. § 2401(b). Finding that Puerto Rico law reflected federal law in determining when a claim accrues for FTCA purposes, the Circuit held that "'a

claim for malpractice accrues against the Government when the claimant discovered, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged malpractice.'" Id. at 1002 (quoting Quinton v. United States, 304 F.2d 234, 240 (5th Cir. 1962)). Applying the test to the case before it, the First Circuit found that the cause of action accrued when the plaintiff wrote the letter stating that he believed that he had been the victim of medical malpractice by the VA Hospital in Río Piedras. See id.

Analogizing the facts in Hau to the present case, Defendant asserts that Plaintiff Juarbe on February 10, 1993, stated in a claim for benefits that the VA Hospital negligently performed cervical surgery on him, thereby worsening his condition. Consequently, Defendant proposes that we should consider February 10, 1993, as the date of accrual. Since Plaintiffs did not file their administrative claims with the Veterans' Administration on or before February 10, 1995, but instead filed them on February 20, 1996, Defendant contends that Plaintiffs' present action is time barred.

Plaintiffs contest Defendant's reasoning and conclusion. They cite Nicolazzo for the proposition that the cause of action for a FTCA medical malpractice claim accrues at the time that a correct diagnosis is made, rather than the date at which the plaintiff realized the potential legal liability of his health providers. In

Civil No. 97-1220 (JAF) 12-

Nicolazzo, a veteran sustained an ear injury in a 1969 helicopter crash while serving in the United States Army. See Nicolazzo, 786 F.2d at 454. At the time of his discharge from the service in 1971, the plaintiff's symptoms included constant ringing and some hearing loss in his left ear, occasional loss of balance, and chronic drainage and infections in the left ear. See id. From 1972 to 1980, the plaintiff saw several VA doctors and one private practitioner for the injury on approximately ten different occasions, resulting in various diagnoses and treatments. See id. at 454-55. None of these significantly improved his condition. See id. at 455. In October 1980, the plaintiff consulted a new doctor who diagnosed the problem as "a chronic infection at the site of the skull fracture incurred in the helicopter crash and from a cholesteatoma resulting from that infection." Id. Following surgery and a treatment of antibiotics, the plaintiff's ear condition improved significantly. See id. After filing an administrative claim in December 1981 and having it denied by the government, the plaintiff filed a FTCA suit in federal court in October 1982. See id. Reversing the district court's grant of summary judgement on statute of limitations grounds, the First Circuit determined that the plaintiff's FTCA was not time barred. See id. Following the reasoning in Kubrick, the court held that the statute of limitations in 28 U.S.C. § 2401(b) did not begin to run until the plaintiff had received the correct diagnosis in October

Civil No. 97-1220 (JAF)                                                    13-

1980. See id. at 456. The First Circuit explained that the plaintiff's "cause of action for medical malpractice is not based on discovery of the injury but on the assertion that competent doctors would have done the extensive tests and x-rays that would have discovered the relatively elusive cause of that injury." Id.

Similarly, Plaintiffs maintain that the cause of action in this case accrued on February 21, 1994, the date that Plaintiff Juarbe allegedly received a correct diagnosis of his condition as "foix-alajouanine syndrome which is believed to be the cause of his spinal cord infarction" by the doctors at Walter Reed. Docket Documents Nos. 52, p. 5; 53. Plaintiffs assert that this condition amounts to an arteriovenous malformation at the thoracic cord level. See Docket Document No. 72, p. 4. Before this date, Plaintiffs claim that other medical practitioners had failed to diagnose correctly Plaintiff Juarbe's condition and, consequently, subjected him to treatment carrying undisclosed risks and complications. However, following the correct diagnosis, Plaintiffs allege that they inquired further with other doctors and lawyers about whether the VA Hospital had negligently treated Plaintiff Juarbe. They eventually filed administrative claims against the hospital on February 20, 1996. Since the administrative actions were filed within the two-year statute of limitations, Plaintiffs contend that their FTCA action is not time barred.

AO 72
(Rev 8/82)

Civil No. 97-1220 (JAF)                                                                14-

Thus, the initial question we face is whether <u>Hau</u> or <u>Nicolazzo</u> control this case. Since we question the continued validity of <u>Hau</u> after <u>Kubrick</u>, we find that <u>Nicolazzo</u> governs the time of accrual. To determine when the plaintiff discovered the alleged malpractice, the court in <u>Hau</u> examined the factual circumstances before it. <u>See</u> <u>Hau</u>, 575 F.2d at 1002. The court found that the letter written by the plaintiff on November 11, 1974, indicated that he was aware of the harmful effects of the treatment and that the Hospital allegedly committed acts constituting malpractice. <u>See</u> <u>id.</u> Hence, the holding in <u>Hau</u> turned on the plaintiff's "unequivocal imputation of negligence on the part of the Veteran (sic) Administration Hospital," which convinced the court that the plaintiff was well aware of facts that would have alerted a reasonable person to conclude that the hospital had negligently treated his condition. <u>Id.</u> at 1002-03. The Supreme Court in <u>Kubrick</u>, however, expressly rejected a lower court's holding that a medical malpractice claim under the FTCA accrues when the plaintiff knew or should have known that a medical practitioner may be legally liable. <u>See</u> <u>Kubrick</u>, 444 U.S. at 119-20, 123. Rather, the Supreme Court held that when the plaintiff knows the critical facts concerning his injury and its cause, i.e., the factual predicate for a malpractice claim, then the cause of action accrues for section 2401(b) purposes. <u>See</u> <u>id.</u> at 121 n.8, 123-24. Thus, the

Civil No. 97-1220 (JAF)                                                    15-

court's reliance in Hau on the plaintiff's awareness that he may have been the victim of a negligently performed procedure is misplaced.

Other courts support our finding, since we could not find a single court after Kubrick which has followed the reasoning or holding in Hau. On the other hand, numerous courts have cited Nicolazzo as authority for their decisions. See, e.g., MacMillan v. United States, 46 F.3d 377, 382 (5th Cir. 1995); McDonald v. United States, 843 F.2d 247, 249 (6th Cir. 1988); Osborn, 918 F.2d at 733; Chamness By and Through Chamness v. United States, 835 F.2d 1350, 1353 (11th Cir. 1988); Schock v. United States, 21 F. Supp.2d 115, 119 (D.R.I. 1998); Magdalenski v. United States, 977 F. Supp. 95, 100 (D. Mass. 1997).

To apply Nicolazzo to the case before us, we must determine whether Plaintiffs filed their administrative claims within two years of Plaintiff Juarbe receiving a correct diagnosis of his condition. Plaintiffs claim that Plaintiff Juarbe received a correct diagnosis on February 21, 1994. In all their submissions in support of their motion for summary judgement, Defendant does not contest this proffer. After reviewing the record and taking the parties' positions into account, we find that Plaintiff Juarbe did not receive a correct diagnosis until the date that he proposes. Since Plaintiffs filed their administrative claims within section 2401(b)'s

Civil No. 97-1220 (JAF) 16-

two-year statute of limitations, we find their FTCA suit is not time barred.

Given our findings, we need not consider the equitable tolling issues raised by the parties.

### IV.

### Conclusion

In accordance with the foregoing, we **DENY** Defendant's motion for summary judgment, Docket Document No. 45.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 10th day of May, 2000.

JOSE ANTONIO FUSTE
U. S. District Judge

AO 72
(Rev 8/82)